

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-51,197-03

### EX PARTE JAMES AARON DYSON, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. C-4-W011479-0657742-C IN CRIMINAL DISTRICT COURT NO. 4
### TARRANT COUNTY

YEARY, J., filed a dissenting opinion in which KELLER, P.J., and SLAUGHTER, J. joined.

### DISSENTING OPINION

Today the Court decides that 23 years ago, the State presented false evidence to secure Applicant's conviction. I respectfully dissent.

Applicant was convicted in 1998 of the offense of engaging in organized criminal activity and sentenced to fifty years' confinement in the penitentiary. Although the jury was presented with an option to convict Applicant of the lesser included offense of aggravated assault, it rejected that option, and found instead that he committed that offense *and* that he did so "as a member of a criminal street gang." TEX. PENAL CODE § 71.02(a)(1). Thus, his punishment range was established at the level of a first-degree felony rather than at the level of a second-degree felony. *Compare* TEX. PENAL CODE § 71.02(b) (engaging

in organized criminal activity is "one category higher" than the most serious predicate felony), *and* TEX. PENAL CODE § 22.02(b) (aggravated assault "is a felony of the second degree"). At trial, Applicant did not contest the fact that he had committed an aggravated assault, but he vigorously disputed that he was a member of a gang.

Testimony supporting Applicant's gang membership came from two sources: Applicant's friend, Robert Aguirre, who was present when Applicant committed the aggravated assault, and Tim Gilpin, formerly an officer with the North Richland Hills Police Department and member of a unit specializing in organized crime and gangs. Aguirre testified that Applicant dressed like a gang member, threw gang signs, and "claimed" to be a member of a gang called the Raza Trece, or "R-13." Gilpin simply testified, without elaboration, that his investigation had revealed that Applicant was a member of this gang. Applicant's conviction was upheld on direct appeal. *Dyson v. State*, No. 02-98-096-CR (Tex. App.—Fort Worth Sept. 16, 1999) (not designated for publication). Thereafter, Applicant pursued an initial post-conviction application for writ of habeas corpus, which this Court denied in 2002, and later a first subsequent post-conviction application for writ of habeas corpus, which this Court dismissed as abusive in 2006.

In 2019, Applicant filed this, his second subsequent post-conviction application for writ of habeas corpus. In it, he specifically claimed that Aguirre's testimony of his gang membership was false, and that he may raise this contention for the first time in 2019 based on new law, relying on this Court's opinion in *Ex parte Chabot*, 300 S.W.3d 768 (Tex. Crim. App. 2009), which was decided after his first subsequent writ application was

dismissed. Notably, Applicant did not challenge Officer Gilpin's trial testimony—only Aguirre's. At first, this Court dismissed Applicant's second subsequent writ application as abusive, but on motion by the State, we reconsidered, and entered an order directing the convicting court to determine, among other things, "whether, but for Aguirre's [allegedly] misleading testimony, Applicant would not have been convicted of engaging in organized crime." *Ex parte Dyson*, No. WR-51,197-03, 2021 WL 359461, at *1 (Tex. Crim. App. Feb. 3, 2021) (not designated for publication). Our order made no mention of Gilpin.

At the beginning of the evidentiary hearing in the convicting court, on March 11, 2021, Applicant indicated that he intended to file a motion requesting that he be allowed to amend his writ application, and such a motion is indeed in the habeas record with a file stamp of March 12, 2021. But no mention was made of the motion when the hearing reconvened on March 12th, and I can find no place in the record where it was granted. Nor does the record contain an amended writ application. I can find nothing to indicate that Applicant has raised an issue as to the accuracy of Gilpin's trial testimony. And nothing in our remand order suggests that the subsequent writ proceedings authorized therein included the evidentiary development of such a claim. The claim is simply not before us. *Cf. Ex parte Carty*, 543 S.W.3d 149, 151 (Tex. Crim. App. 2018) (plurality opinion) (holding in a post-conviction capital habeas corpus context that an issue not raised in the writ application did not invoke the jurisdiction of the Court).

What is more, it is not clear to me that either this Court or the convicting court is authorized to grant a motion to amend or supplement a second subsequent writ application to add a new claim in any event, consistent with Section 4 of Article 11.07. TEX. CODE

CRIM. PROC. art. 11.07, § 4. It is true that the Court has held that an applicant may amend or supplement an *initial* writ application without implicating abuse-of-the-writ principles—at least anytime up until the writ application is disposed of, or this Court files and sets it for determination. *Ex parte Saenz*, 491 S.W.3d 819, 824–25 (Tex. Crim. App. 2016); *Ex parte Speckman*, 537 S.W.3d 49, 56 & n.9 (Tex. Crim. App. 2017). But the Court has never held that an applicant may likewise amend or supplement a *subsequent* application at will, especially once this Court has already culled the issues and remanded the case for development of a very specific issue to the exclusion of all other issues, which failed the Section 4 hurdles.

At the writ hearing, there was indeed substantial evidence that Aguirre's trial testimony was misleading to the extent that it suggested that Applicant was a member of the R-13 gang. Notably, however, at no point has Aguirre explicitly retracted his trial testimony that Applicant at least *claimed* to be a member, however jokingly, and Gilpin's testimony constitutes at least some evidence to bear out the accuracy of that claim. For at least that reason, I cannot say that, had the jury been aware of the misleading aspects of Aguirre's trial testimony, it would likely have made any difference to its verdict finding Applicant guilty of organized criminal activity. Given the pleading, the scope of our remand order, and the evidence presented at the hearing on remand, I likewise cannot conclude that Applicant is entitled to relief on his false evidence claim, as he framed it.

Finally, even if I thought the convicting court and this Court were within their statutory authority to incorporate an issue regarding the accuracy of Gilpin's trial testimony within the scope of Applicant's false evidence claim as it was pled, I would not vote to

grant Applicant relief. Gilpin has never recanted his trial testimony, conclusory though it may have been. While the evidence presented at the writ hearing strongly suggests he may have been mistaken, it stands in my mind as impeachment evidence only; though compelling, it does not definitively show that Gilpin's testimony was false or misleading.

As for the concurring opinion, I would only repeat what we have said on other occasions: "While the State's confession of error in a criminal case is important and carries great weight, we are not bound by it. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002). This Court must still independently examine the error confessed because 'our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.' *See id*." *Estrada v. State*, 313 S.W.3d 274, 286 (Tex. Crim. App. 2010).

On these bases, I dissent to the Court's order granting Applicant relief on his conviction for engaging in organized criminal activity.


FILED:                                    September 29, 2021
PUBLISH